UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR A FRAUD INVESTIGATION | ML No: 24-183 |

*Reference:*   DOJ Ref. # CRM-182-88738

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Michael E. Eaton, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from the Kingdom of Denmark. In support of this application, the United States asserts:

RELEVANT FACTS

1.  The Central Authority of Denmark, the Director of Public Prosecutions, submitted a request for assistance (the Request) to the United States, pursuant to the Instrument Between the Kingdom of Denmark and the United States of America, as contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance Between the United States of America and the

European Union signed 25 June 2003, U.S.-Den., June 23, 2005, S. TREATY DOC. NO. 109-13 (2006) (the Treaty).

2.      As stated in the Request, the Prosecution Service of the North Zealand Police in Denmark is investigating unknown subjects for fraud, which occurred between approximately December 2021 and May 2022, in violation of the criminal law of Denmark, specifically, Article 279 of the Danish Criminal Code.  Under the Treaty, the United States is obligated to assist in response to the Request.

3.      According to Danish authorities, in approximately June 2022, a Danish citizen (the victim) reported that she had been the victim of fraud in connection with an online relationship.  Specifically, in approximately December 2021, the victim wrote to an Instagram account that she believed belonged to the lead singer of a prominent Canadian rock band.  Soon thereafter, the victim began to exchange direct messages with who she believed was the lead singer of this band.  The victim stated that in addition to their numerous online communications, she and the purported lead singer also had several telephone conversations, and the victim claims that she fell deeply in love with the man who she believed was the lead singer.

4.      During these conversations, the purported singer claimed on multiple occasions that he needed money as a loan because he was experiencing problems with his bank as his account had been hacked and he was unable to access his own money.  For example, on December 10, 2021, the victim transferred USD 600 to Well Fargo Bank, N.A. account number xxxxxx9044, located in the United States, because she thought she was purchasing a VIP ticket to meet the singer.  Five days later, the victim transferred an additional USD 600 to the Wells Fargo account to pay for a special fan certificate.  On December 23, 2021, the victim was informed that her VIP ticket and certificate were ready, but the chairman of the board refused to

sign them due to the victim's "half payment" and she would need to pay an additional USD 1,500 before she could meet the singer.  After making that payment, as well as additional payments, the victim was told on January 7, 2022, that the singer's jet to Denmark was cancelled and the band's management could not pay for the singer to travel to be with her.  The victim was told that she would have to pay an additional USD 14,700 for the singer to travel to meet her.  On January 12, 2022, the victim transferred USD 7,300 to Wells Fargo bank account number xxxxxx9044as partial payment for the singer's travel to meet her.  On January 21, 2022, the victim transferred an additional USD 3,000 to this Wells Fargo account after she was told she was the singer's favorite fan and the band's management would make sure the singer travels to see her once she paid USD 3,000.

5.      On February 16, 2022, the purported singer sent an email to the victim that was designed to be shared with the victim's bank.  The email asked the victim's bank to raise her credit limit so the victim could make a final payment of USD 7,000 to the singer's record label.  The purported singer told the victim's bank that he would "personally vouch for all money paid to Darnell Ridley, Baltimore, USA (account number xxxxxx9044)," the Wells Fargo bank account where all the victim's funds transfers had been sent.  The purported singer added that he would repay the money by February 25, 2022, or March 1, 2022, and he described the victim as his future wife with whom he was trying to start a family.

6.      The victim was ultimately told that all arrangements had been paid by the victim and the singer was expected to arrive in Copenhagen on February 25, 2022.  However, the victim was told that the singer did not make the trip to Denmark because he had a sold-out concert elsewhere.  In May 2022, the band's management requested additional funds for the singer to travel.  On May 2, 2022, the victim transferred USD 700 to Bank of America account number

xxxxxxxx4486, located in the United States, and indicated it would be her last payment. In June 2022, after receiving an email asking the victim to pay for jet fuel so the lead singer could visit her, the victim advised that she could not make another payment and she was struggling to keep her home. Soon thereafter, the victim received an Instagram message from the purported singer saying that he wanted to end things with the victim and that he was going to delete the account he used to communicate with her.

7. As noted below, between approximately December 10, 2021 and February 24, 2022, the victim transferred approximately USD 21,350 to Well Fargo Bank, N.A. account number xxxxxx9044. Additionally, on May 2, 2022, the victim transferred USD 700 to Bank of America account number xxxxxxxx4486.

| Date | Victim's Account # | U.S. Bank Account # | Danish Krone | USD |
|---|---|---|---|---|
| 12/10/2021 | 3001695932 | Wells Fargo  xxxxxx9044 | 4,013.24 | 600 |
| 12/15/2021 | 3001695932 | Wells Fargo  xxxxxx9044 | 4,017.56 | 600 |
| 12/20/2021 | 3001695940 | Wells Fargo  xxxxxx9044 | 5008.18 | 750 |
| 12/27/2021 | 3001695932 | Wells Fargo  xxxxxx9044 | 9928.70 | 1,500 |
| 1/03/2022 | 3001695932 | Wells Fargo  xxxxxx9044 | 4643.47 | 700 |
| 1/12/2022 | 3001695940 | Wells Fargo  xxxxxx9044 | 48,279.97 | 7,300 |
| 1/21/2022 | 3001785850 | Wells Fargo  xxxxxx9044 | 20,131.30 | 3,000 |
| 1/27/2022 | 3001695932 | Wells Fargo  xxxxxx9044 | 6,081.66 | 850 |
| 2/2/2022 | 3001695932 | Wells Fargo  xxxxxx9044 | 9,285.70 | 1,350 |
| 2/18/2022 | 3204433453 | Wells Fargo  xxxxxx9044 | 26,645.20 | 4,000 |
| 2/24/2022 | 3204433453 | Wells Fargo  xxxxxx9044 | 5,156.50 | 700 |
| 5/2/2022 | 3001695940 | Bank of America xxxxxxxx4486 | 5,366.08 | 700 |

8. To further the investigation, Danish authorities have asked U.S. authorities to provide bank records pertaining to Well Fargo Bank, N.A. account number xxxxxx9044 and Bank of America account number xxxxxxxx4486, both located in the United States, and to compel the account holders to submit to interviews.

4

LEGAL BACKGROUND

9. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

10. The United States and Denmark entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters. See Treaty, pmbl. The Treaty obligates each party, upon request, to provide "mutual assistance to the widest extent possible for the purpose of investigations or proceedings concerning criminal offences related to computer systems and data, or for the collection of evidence in electronic form of a criminal offence." Treaty chap. III, § 1, tit. 3, art. 25, ¶ 1. In addition, the Treaty provides that "[e]ach Party shall also adopt such legislative and other measures as may be necessary to carry out the obligations set forth in . . . [the Treaty] . . . ." Treaty Chap. III, §3, tit. 1, art.25, ¶ 2.

11. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

5

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \* \* \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \* \* \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

12.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

necessary to execute a foreign request.

13.     An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

14.     Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents

---

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

7

or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

15. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Director of Public Prosecutions, the designated Central Authority in Denmark, and seeks assistance in the investigation of fraud – a criminal offense in Denmark. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records and account holder interviews, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

16. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

17. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and

commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance.  <u>Young v. U.S. Dept. of Justice</u>, 882 F.2d 633, 639 (2d Cir. 1989), <u>cert. denied</u>, 493 U.S. 1072 (1990); <u>In re Letters of Request from the Supreme Court of Hong Kong</u>, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); <u>In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti</u>, 669 F. Supp. 403, 407 (S.D. Fla. 1987).  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

18.     Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Michael E. Eaton, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to

collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

        Respectfully submitted,

        VAUGHN A. ARY
        DIRECTOR
        OFFICE OF INTERNATIONAL AFFAIRS
        OK Bar Number 12199

By: _____
        Michael E. Eaton
        Trial Attorney
        CT Bar Number 418893
        Office of International Affairs
        Criminal Division, Department of Justice
        1301 New York Avenue, N.W.
        Washington, D.C. 20530
        (202) 616-2706
        *Michael.E.Eaton@usdoj.gov*